UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re  
Jacquelyn M. Kearney,  
          Debtor.

Chapter 13  
Case No. 09-24918-svk

**DECISION AND ORDER ON TRUSTEE'S OBJECTION TO CONFIRMATION**

"Next to being shot at and missed, nothing is really quite as satisfying as an income tax refund." F.J. Raymond. This Court has encountered a series of cases demonstrating just how precious the annual tax refund is to a Chapter 13 debtor. *See, e.g., In re Spraggins*, 386 B.R. 221 (Bankr. E.D. Wis. 2008); *In re Stimac,* 366 B.R. 889 (Bankr. E.D. Wis. 2007). In this case, the Court again is asked to consider whether a debtor must share her tax refunds with her creditors. The wrinkle here is that the Debtor, whose income is above the state median, was not originally required to dedicate her tax refunds to the plan. *See In re Stimac*, 366 B.R. at 893-94 (explaining why above-median income debtors are not required to pay over tax refunds). However, the Debtor has proposed to modify her confirmed plan by reducing her payments to unsecured creditors, and the Trustee contends she now must pay over her tax refunds.

    Jacquelyn Kearney (the "Debtor") filed a Chapter 13 case on April 14, 2009. She amended her plan several times before the Trustee recommended confirmation, and the Court confirmed the plan on July 2, 2009. The confirmed plan proposed to pay $738.50 per month for 60 months, generating a 100% dividend to unsecured creditors. The Debtor was required to propose a 100% plan because her projected disposable income over the requisite 60-month applicable commitment period exceeded the amount due to her unsecured creditors.

Since above-median debtors are not required to dedicate tax refunds to the plan, and the Debtor was proposing to pay 100% of the unsecured claims, the confirmed plan contained no

provision for tax refunds to be paid to the plan.[1]  By March 2010, the Debtor had missed two plan payments, and the Trustee moved to dismiss her case.  On March 29, 2010, after a hearing on the Motion to dismiss, the Court entered an Order requiring the Debtor to make plan payments of $738.50 per month, with the proviso that if the Debtor defaulted on any plan payment between April and September 2010, her case would be dismissed.

On September 15, 2010, the Debtor filed a modified plan, proposing to reduce her plan payment to $610 per month, resulting in a 72% dividend to unsecured creditors.  In her Motion to modify the plan, the Debtor alleged a reduction in income since the filing of the case.  She did not propose to pay over any of her tax refunds under the modified plan.  The Trustee objected to the proposed modification, arguing that the Debtor should be required to dedicate one-half of her tax refunds to the plan in addition to the monthly payments.  He contends that allowing the Debtor to keep disposable income in the form of tax refunds violates the good faith requirement for plan confirmation, because the Debtor is not paying all that she can.  The Debtor responded that the modification was filed in good faith; and that because tax refunds were not required in the original confirmed plan, the Trustee cannot now require them in a modified plan.

The Bankruptcy Code permits the Court to modify a Chapter 13 plan after confirmation upon the request of the debtor, trustee, or unsecured creditor, and one of the authorized reasons for a modification is to "increase or reduce the amount of payments on claims of a particular class provided for by the plan." 11 U.S.C. § 1329(a)(1).  Under § 1329(b), "[s]ections 1322(a), 1322(b), and 1323(c) of this title and the requirements of section 1325(a) of this title apply to any modification."  Specifically excluded from the list of sections that apply to post-confirmation modifications is § 1325(b): the provision requiring the dedication of the debtor's projected

---

[1] Customarily, in the Eastern District of Wisconsin, below-median debtors must dedicate one-half of their tax refunds to the payment of unsecured creditors under the plan, unless the plan proposes to pay 100% to unsecured creditors.

2

disposable income to the plan.  Although some courts disagree, "[t]he plain meaning of the statute supports the conclusion that modification is not subject to the disposable income test." *In re Young,* 370 B.R. 799, 802 (Bankr. E.D. Wis. 2007) (citing *In re Golek*, 308 B.R. 332, 336-37 (Bankr. N.D. Ill. 2004).  *But see In re King*, 2010 Bankr. LEXIS 3719 (Bankr. S.D. Ill. Oct. 20, 2010) (plan modifications are subject to § 1325(b)).  In *Young*, a case in which the debtors proposed to modify their plan to claw back previously dedicated tax refunds, Judge McGarity recognized that even without consideration of the projected disposable income test of § 1325(b), the modified plan must satisfy the "good faith" requirement of § 1325(a)(3).  Application of this requirement included an inquiry into whether the tax refunds were necessary for the debtor's maintenance and support.  *In re Young,* 370 B.R. at 802*. See also Sunahara v. Burchard (In re Sunahara),* 326 B.R. 768, 781-82 (B.A.P. 9th Cir. 2005) (although projected disposable income test does not apply, court should carefully consider whether modification has been proposed in good faith, including an assessment of the debtor's overall financial condition and whether the debtor's disposable income will significantly increase due to increased income or decreased expenses over the remainder of the plan).  This Court agrees with *Young* and *Sunahara*, that the projected disposable income requirement of § 1325(b) does not apply to a post-confirmation modification; but the debtor's income and expenses are relevant to a determination of whether the modification is being proposed in good faith.  *See In re Wetzel*, 381 B.R. 247, 252 (Bankr. E.D. Wis. 2008) ("Although the disposable income test does not explicitly apply, courts have recognized that the 'debtor's changed income and expenses are factored into the bankruptcy court's good judgment and discretion.' ").

       The Debtor, as the party seeking the modification, bears the burden of proof.  *See In re Wetzel,* 381 B.R. at 248.  The Debtor claims that her modification is filed in good faith because a reduction in her plan payments is necessitated by her loss of income.  However, a comparison of

3

the Debtor's own Schedules (signed under penalty of perjury) refutes her allegations. The Debtor filed her original Schedule I (income) and Schedule J (expenses) with her petition on April 14, 2009. Then, to support her plan modification, on September 15, 2010, the Debtor filed amended Schedules I and J. In her original Schedule I, the Debtor disclosed monthly gross salary of $5,310.93, payroll taxes of $1,446.75 and a 401k contribution of $108.33.[2] In her amended Schedule I, rather than reduced income as alleged in her Motion to modify the plan, the Debtor's gross salary has actually increased to $5,691.86. From this higher income, the Debtor deducted the increased amount of $1,698 for payroll taxes and social security. She also added a deduction of $54 for a "flexibile [sic] spending account" and increased her 401k contribution from $108 to $310 per month.[3] With these additional deductions, the Debtor's net monthly take home pay is indeed reduced from that claimed at the beginning of the case. In her amended Schedule J, the Debtor asserts take home pay of $3,510 per month.

A comparison of the expense Schedules is equally troubling. The amended Schedule J shows that her rent or mortgage payment has decreased from $1,300 to $1,100 per month suggesting that, coupled with her almost $400 monthly increase in income, the Debtor should be able to fund the original plan payments. However, most of the other expenses have increased, and the Debtor has added some new expenses, presumably to justify her lower plan payments. On the amended Schedule J, the Debtor, who has no dependents, claims monthly expenditures of $300 for food (up from $250); $50 for laundry and dry cleaning; $250 for medical and dental (up from $60); $250 for telephone; $50 for recreation, clubs, and entertainment (up from $45); and $300 for transportation (up from $250). New expenses include $100 for auto insurance, and $150 for housekeeping supplies, personal care products and services and vehicle maintenance and repair. Some of the expenses border on the unreasonable. Conveniently, the difference

---

[2] The Debtor also claimed insurance of $14.21 and union dues of $74.69, for monthly take home pay of $3,666.95.
[3] Her insurance deduction allegedly grew to $40.78 and her union dues increased to $79.24.

4

between the income and expenses in the amended Schedules is $610.01, the same amount proposed to be paid under the modified plan. In sum, it appears that the Debtor's alleged reduction in income is either an outright misrepresentation or a reference to her reduced take home pay, itself a product of a voluntary increase in discretionary spending on health savings accounts and retirement contributions.[4]

Under these circumstances, it is almost inexplicable that the Debtor was unwilling to dedicate a portion of her tax refunds to the modified plan, in order to appease the Trustee. With her gross income of almost $5,700 per month, the Debtor is obviously not living at or below subsistence levels and cannot establish that one-half of her tax refunds are necessary for her daily living expenses. *Compare In re McCrary*, 172 B.R. 154, 158 (Bankr. S.D. Ga. 1994) (debtor's $1,600 tax refund was not disposable income that needed to be applied to the plan because the debtor was living below subsistence levels on $716 per month).

Based on the facts in the record, the Debtor clearly has not met her burden of proving that this modification is proposed in good faith. *See In re Smith*, 328 B.R. 797, 802 (Bankr. W.D. Mo. 2005). By misrepresenting that a reduction in income justified a reduction in plan payments, the Debtor has not been forthcoming with either the Court or her creditors. *In re Love*, 957 F.2d 1350, 1357 (7th Cir. 1992). Apparently, in order to support a reduced plan payment in the face of an increase in income, the Debtor manipulated the expense deductions for her own benefit. But the determination of a debtor's reasonably necessary expenses must seek to balance the needs of the debtor with the interests of creditors. *See In re Turner*, 574 F.3d 349, 355 (7th Cir. 2009). *See also In re Williams*, 394 B.R. 550 (Bankr. D. Colo. 2008) (observing

---

[4] The "Notice and Request to Modify Chapter 13 Plan" was signed by the Debtor's attorney and stated, without any further explanation: "The reason(s) for the modification is/are: Debtor has experienced a reduction in income with her current employer since the filing of this case." It strains credulity to interpret this statement in any way but as a reduction in gross, not net, income. At the hearing on the Trustee's Objection to the modified plan, the attorney maintained that the Debtor had a reduced income due to a loss in hours at work, and had "stretched her budget" around receipt of the tax refunds. The amended Schedules, which clearly contradict these representations, were not mentioned at the hearing.

5

that the good faith test should be used to ferret out those debtors who attempt to manipulate the Code).

In reaching this conclusion, the Court is not creating an absolute rule that an above-median income debtor who modifies her plan and decreases the dividend to creditors must contribute tax refunds to establish good faith. Rather, the Court will continue to evaluate good faith on a case by case basis. *See In re Love,* 957 F.2d at 1357 ("The fact is, the good faith inquiry is both subjective and objective."). For example, if the Debtor truly had suffered a reduction in income, and had engaged in belt-tightening as demonstrated by reasonable expense deductions, yet still needed the tax refunds to get by, the analysis would be different. *See In re McCrary*, 172 B.R. at 158. But the facts in this case do not establish that the Debtor has reduced income, and in fact, she has misrepresented her income situation to the Court while manipulating her expense deductions to deprive the unsecured creditors of the dividend to which they are entitled. These facts prove a lack of good faith, and this plan modification cannot be confirmed.

IT IS THEREFORE ORDERED: That the Trustee's objection to the Debtor's motion to modify her confirmed plan is sustained.

Dated: December 3, 2010

By the Court:

Susan V. Kelley
U.S. Bankruptcy Judge